## Henderson Elevator Company, et al. v. City of Henderson, et al.

(Decided February 24, 1920.)

## Appeal from Henderson Circuit Court.

1. Municipal Corporations—Control of Streets—Abutting Owners —Action to Close Street.—A city of the third class has, under its charter powers, complete control of all streets, alleys and other public ways within its corporate limits; and its governing authorities may, by the passage of proper ordinances so directing, open, improve, alter, extend or close any street, alley or part thereof when in their discretion deemed necessary for the benefit of the public; but the closing of a street or alley, whether as a whole or in part, must be effected through the bringing of an action by the city for that purpose in the circuit court, to which all persons owning the lots abutting on either side the street or alley, or part thereof, proposed to be closed, are required to be made parties.

2. Municipal Corporations—Abandoned Street—Action to Close— Parties.—Where in an action brought by the city of Henderson to obtain the closing of a part of a street abandoned by a change therein, as directed by an ordinance duly adopted by its common council, it was conclusively made to appear that all the ground occupied by the new part of the street as changed, and also the ground bordering each side of that part of the street to be closed, was owned by the single corporation made a defendant to the action, others owning lots bordering either side of other parts of the street not affected by the change or the closing of so much of the street as was thereby discontinued, although permitted by the filing of their intervening petition to become parties to the action,

had no legal right to object to the closing of the abandoned part of the street.

3. Municipal Corporations—Action to Close Street.—In an action by a city to close part of a street, the only persons entitled to compensation and who are necessary parties, are those owning property abutting on that part of the street proposed to be closed; and as in this case the only owner of the property abutting on that part of the street to be closed, consented to the closing thereof and gave the ground for the change in the street, no compensation was asked or awarded.

4. Municipal Corporations—Action to Close Street.—A city may alter or close a street, although it was conveyed to and accepted by it under a deed providing that it should always remain free and open as a street.

5. Municipal Corporations—Control of Streets.—The city has the same control over highways deeded to it, that it has over other public ways, whether acquired by gift, purchase or condemnation. In accepting the dedication of a street by deed, the city only assumes the duty of keeping it open as it does other streets, with the right to close it as it might other streets which cease to be useful to the public.

6. Municipal Corporations—Closing Street—Reversion.—Upon the closing of a street or part thereof by a city, the ground embraced therein reverts to the owners of the abutting lands on either side thereof; those of each side taking it to the middle of the abandoned street. But where the land on each side of the abandoned street is owned by a single person (or corporation as in this case) such person will be entitled to take the whole of it.

JOHN C. WORSHAM for appellants.

B. S. MORRIS, DORSEY & DORSEY and YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Henderson is a city of the third class possessing under the Constitution and statutes of the state the privileges and powers and owing to the public all the governmental duties that appertain to other municipalities of its class. By virtue of those powers and duties it maintains within its corporate boundaries a system of streets, alleys and sewers; among the former being Heilman street, a short thoroughfare running from Third to Fifth streets in the vicinity of a depot, grounds and numerous railroad tracks known as "Union Station," maintained by the Louisville, Henderson and St. Louis, and Illinois Central Railroad Companies. The greater

part of Heilman street, originally limited, however, to a width of twenty-five feet, seems to have been first established as a street or passway May 1, 1895, by the heirs at law of Joel Lambert, deceasd, the then owners of the land over which it in large part ran. This is shown by a deed of partition made between them whereby each heir was conveyed his or her part of the land and from which it is apparent that though the street or passway was established primarily for the convenience of the Lambert heirs, no restrictions were imposed upon its free use by the public. Indeed, such use of it appears to have been enjoyed by the public for quite a number of years before the partition of the Lambert lands. The map here furnished, though without artistic merit, will give a fairly accurate understanding of the location of Heilman street, its topography and a description of the lands bordering it, as well as the names of the respective owners thereof.

As originally established by the heirs at law of Joel Lambert, deceased, so much of the open way, later called Heilman street, as we are required to consider extends, as indicated on the map, from the letters "A" to "B," thence to "C," thence to "D," where it connects with Fifth street; but at the letter "C," as shown on the map, it turns eastwardly and runs on an oblique course to its intersection with Fifth street at "D." It also appears from the map that the land bordering Heilman street on the east from "B" to "C," thence to "D," and also on the west side thereof from "E" to "H," is owned by the appellee, Waller and Company; that the vacant lot bordering the street on the west from "H" to "I" is owned by one Quinn; that the vacant lot on the same side, running from "I" to "K," adjoining the Quinn lot is owned by the appellants, S. H. and M. Kimmel; and that the land lying north of and bordering the bend in Heilman street from "A" to "B," thence in an easterly course and with the northern boundary of the land of Waller and Co. to a point not indicated on the map, is owned by the appellant, Henderson Elevator Company.

The several owners of the lots, respectively, described above, derived title to same, directly or remotely, through deeds of conveyance from the heirs at law of Joel Lambert, each of which seems to have conveyed to the grantee named therein whatever right the grantor had in the passway now included in Heilman street. Both the Henderson Elevator Company and Waller and Company have been duly incorporated under the laws of this state and are engaged in the business of buying, selling and storing grain, each owning and operating upon its own premises, elevators, concrete bins and other equipment necessary to such business. After the property now owned by the appellant, Henderson Elevator Co., was acquired by its immediate vendor, C. M. Bullett, of Mrs. M. N. Elliott, one of the Lambert heirs, and before its conveyance to that company by Bullett, the latter by a deed or other writing that passed between him and the other Lambert heirs, or their grantees, then owning the remaining lots of Heilman street, entered into an agreement whereby he and they contributed enough additional ground from their respective lots bordering the street, to increase its width from twenty-five to fifty feet, beginning on the map, say, at

the letter "A" and ending at the letter "C," from which point to the letter "D," it remained, as theretofore, only twenty-five feet in width. The execution of this agreement and accompanying acts of the parties seem to have been intended as a dedication of Heilman street to the city of Henderson for use as such by the public. But whether or not such was its legal effect, is not material, as a dedication of the street was subsequently formally made by the several·owners of the lots bordering thereon, or their grantees, by deed duly executed June 24, 1912, whereby they, respectively, conveyed to the city of Henderson whatever title they had to Heilman street, and also so much ground from their respective lots bordering it as would be necessary for the construction of a sewer required for the city's needs, in consideration of which it agreed to accept, keep in repair and maintain the street for the use of the public, which it admittedly has since done.

In 1917, however, the common council of the city of Henderson deeming it necessary to widen and straighten that part of Heilman street from a point shown on the map by the letter "C" to Fifth street, duly passed an ordinance requiring that this be done by discontinuing and closing so much of the street as turns eastward at "C" and runs obliquely to Fifth street at "D," and in lieu of the part so closed, to continue the street from "C" in a straight line, on new ground fifty feet in width, to Fifth street at "F" and from "H" to Fifth street at "G." The ground on each side of that part of Heilman street directed to be closed is owned by the appellee, Waller and Co., which is, or was until it was conveyed to the city of Henderson for that purpose, likewise the owner of the ground on which the new part of the street is to be opened.

The ordinance directed that upon the opening of the new or changed part of Heilman street the part discontinued be conveyed by the city of Henderson by proper deed, to the appellee, Waller and Co.; and also directed the city attorney to institute an action in the circuit court to carry into effect so much thereof as directed the discontinuance of that part of Heilman street where it deflects from a straight line to "C," and runs on an easterly course obliquely to Fifth street at "D," this course of procedure being required by the charter of the city of Henderson. That city being one of the third

class it is given by Kentucky Statutes, section 3290, sub-section 7, through its common council power:

"To open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve, clean, sprinkle and keep in repair streets, alleys, lanes, avenues and side-walks, or to have the same done;  . . .   and to make appropriations for same."

The manner of exercising the  above  enumerated powers is defined by section 3449 and other subsequent sections of the statute, all of which were amended and the powers they confer enlarged in numerous particulars, by an act of the general assembly of March 7, 1917 (Acts 1916, page 28), which act, in so far as necessary to be here considered, provides:

"That section 3449 of the Kentucky Statutes be, and the same is, hereby amended and re-enacted to be read as follows: The common council, or the board of commissioners in cities which have adopted or may adopt, the commission form of government, shall have and exercise exclusive control and power over the streets, roadways, sidewalks, alleys, landings, wharves, public grounds and highways of the city; to establish, open, alter, widen, extend, close, grade, pave, repave, clean and keep in repair the same; to prevent and remove all encroachments thereon or obstructions thereof; to put drains and sewers in the same and to regulate and prohibit the building of vaults and areas under sidewalks; to enforce and regulate connection with sewer, gas and water mains and conduits of all kinds laid in or under the streets and highways of the city for any purpose. Upon the adoption of an ordinance by the common council or said board of commissioners authorizing and directing the closing of the whole or any portion of a street or alley or other public highway within the limits or jurisdiction of the city, it shall be the duty of the city attorney to institute an action in the circuit court for the purpose of having the same closed, and to such action all the owners of ground in the squares of lots divided by such street, alley or highway, or the portion thereof proposed to be closed, shall be made defendants; and if all defendants competent to act for themselves shall fail to object to the closing prayed for, then the court shall render a decree accordingly, but if any of said defendants object, or are under disability other than coverture, the court shall empanel a jury, which shall

hear evidence and determine the amount of compensation in the form of damages to be paid to each of such defendants. The court shall thereupon direct that said street, alley or other highway be closed upon payment to each of such defendants of the amount of damages awarded to him, or, if any defendant refuses to accept such payment, or be for any reason unable to do so, upon payment into court of the amount awarded such defendant or defendants. It shall be the duty of the court to give such proceedings precedence over other cases."

As previously indicated, the city of Henderson before the passage of the act, *supra,* possessed under section 3290, subsection 7, of its charter as well as the other sections thereof amended by the act, ample authority to improve, open, widen, extend or close a street, alley or other public highway within its corporate limits, and the object of the amendatory act was to broaden and make more specific the powers already possessed by the city over its streets, alleys and other public highways, and especially to regulate the procedure to be followed by the city authorities in the exercise of its power to close, in whole or in part, a street, alley or other public highway, as well as to provide a remedy for the protection of persons whose rights as owners of the real estate abutting the public way proposed to be closed, might be affected by the closing thereof; hence, its requirement that the street be closed by the institution in the circuit court of an action by the city attorney to which the property owners to be affected must be made parties. This provision of the act, as is patent from its language, only requires that persons owning the real estate abutting each side of that part of the street proposed to be closed, shall be made defendants to the city's action.

While the city attorney was preparing to bring the action as required by the ordinance, but before he had an opportunity to file the petition, the appellants, Henderson Elevator Company and S. H. and M. E. Kimmel, on December 22, 1917, instituted an equitable action in the Henderson circuit court against the city of Henderson, its mayor, each of the twelve members of its common council, the city attorney and A. Waller and Co., in which it was alleged that the city of Henderson, its mayor and common council were without power to convey or cause to be conveyed such part of Heilman street as might be discontinued to A. Waller and Company, and

that the latter company was not entitled to take or hold the title thereto. By the prayer of the petition the court was asked to temporarily restrain and permanently enjoin the city, its mayor, common council and city attorney from attempting to enforce so much of the ordinance as provides for the conveyance of any portion of Heilman street to the defendant, A. Waller and Co., and for such other relief as the plaintiffs might be entitled to receive.

By an amended petition additional allegations, challenging the right of the city authorities even to discontinue that part of Heilman street contemplated by the ordinance were made, and their power to take such action denied; the pleading closing with a prayer that the enforcement of that provision of the ordinance directing the discontinuance of a part of Heilman street, as well as the part directing the conveyance to A. Waller and Company of the discontinued portion thereof, be enjoined.

The appellees filed a general demurrer to the petition as amended, which was overruled by the court, to which ruling they excepted. They thereupon answered traversing the averments of the petition as amended.

December 27, 1917, five days after the above action was brought and before the granting of the temporary injunction therein, the city attorney of Henderson, as directed by the ordinance referred to, instituted in its behalf in the Henderson circuit court the action looking to the closing of a part of Heilman street, making the appellee, A Waller and Company, sole owner of the ground bordering each side of that part of the street to be discontinued, a defendant. The appellants filed in the action an intervening petition and were, upon their motion, made defendants to same and the intervening petition taken as their answer. That pleading, after reiterating the averments of the appellants' petition and amended petition in the first action regarding the alleged absence of power in the city of Henderson to close any part of Heilman street, or to convey to A. Waller and Company that part directed to be closed, set forth in greater detail than was therein stated the grounds upon which these contentions were rested, which, briefly stated, are as follows: First, that as, according to the written instrument by which the ground embraced in Heilman street was dedicated to the city

for street purposes, the principal consideration for the latter's agreement to accept the dedication and maintain the street was the right to lay its sewer pipe under it and along the land of the grantors abutting the street, and to go upon the land for the purpose of repairing the sewer; and the city laid its pipe and exercised its right to go upon the land for the purpose of repairing the sewer, it cannot after receiving the benefits of the contract and now being in the enjoyment of the same, evade its obligation to maintain the ground dedicated as a city street its entire length as then opened to travel. Second, that as the grantors of the ground now embraced by the street were, as tenants in common, entitled to the common possession and use of the passway at the time of its dedication as a street, if the city of Henderson has the right to change the street and thereby discontinue or close any part thereof, all the grantors are or will be equally entitled as tenants in common to that part of the street which may be discontinued or closed; hence the appellee, A. Waller and Company, cannot be given by the city exclusive possession of that part of the street so discontinued or closed, nor has the city the power to convey it to that company by deed.

After the filing in the second action of such responsive pleadings as were necessary to complete the issues, the two actions were by agreement of the parties consolidated and tried together; the evidence by further agreement being introduced orally. By the decree rendered it was adjudged by the court: (1) That the city of Henderson had the right to close that part of Heilman street sought to be discontinued, and neither the appellants nor others would be damaged thereby. (2) That the temporary injunction granted at the beginning of the suit be dissolved. (3) That the plaintiffs in the two actions pay their respective costs. (4) That upon the closing of that part of the street sought to be discontinued the title to the portion so closed should by deed from the city of Henderson be conveyed to and vest in the appellee, A Waller and Company, in fee simple. The appellants complain of the judgment, hence this appeal. Taking up these contentions in the order stated, it may be said of the first that the writing whereby Heilman street was conveyed or, more properly speaking, dedicated by the appellants and other abutting property owners to the city of Henderson imposed no restriction

upon its right to extend, straighten, widen or, in part, close it as proposed by its common council; nor could it legally have accepted the dedication of the street under such a limitation upon its legislative discretion, as it would have amounted to an attempted relinquishment of the power to regulate and control its streets and highways, or one of them, which public necessity and convenience demand shall at all times be maintained by its municipal authorities. Louisville City Railway Co. v. City of Louisville, 8 Bush 415. It is as much the duty of the city of Henderson to maintain Heilman street for the use of all other inhabitants within its corporate boundaries as for that of the appellants, and so long as it is maintained as a public street, whether in the same condition as when dedicated or a changed one better adapted to the needs of the public, the appellants' right to its use, being neither greater nor less than that of all others who travel it, is one that may be enjoyed in common with that of the public.

In Henderson v. City of Lexington, 132 Ky. 390, the matter involved was the right of the city of Lexington to close an alley which had been dedicated to and accepted by it under a deed providing that it should always remain free and open as a public street or alley. The closing of the alley was strongly resisted by the owners of the abutting lots. The charter of the city of Lexington contains provisions similar in all respects to those of the city of Henderson set out above in this opinion. One of the important questions passed on in the case, *supra,* was as to the right of the city authorities to close the alley where it was made to appear that the closing was necessary for a public purpose. In respect to this question the court said:

"On the other hand, when a municipal corporation invested by the legislature with the power to close streets, alleys and highways, or to acquire property, undertakes to exercise the power, the presumption will be indulged that it is in the interest of and for the benefit of the public, and that the proceeding is not for private or individual use or advantage. And so if a municipality ordains that an alley or highway shall be closed, or a street opened, it will be presumed that it is done in the interest of the public and necessary for public purposes, and the burden of showing to the contrary will be upon the persons who object to the proceeding, and the courts

usually permit the defendants to make the issues and present evidence in support of it."

Another question decided in the case was whether the provision of the deed of dedication requiring that the alley should always remain free and open as a public highway, prevented that city from closing it. In holding that the provision in question did not prevent the closing of the alley by the city the court further said: "It is further insisted that, as Ayers alley was conveyed to and accepted by the city under a deed providing that 'it shall always remain free and open as a public street or alley,' the city had no power to close it in violation of the express conditions under which it was accepted. This argument, if sound, would in many instances impose upon municipalities unnecessary and unreasonable burdens. If a street or highway dedicated to a city should cease to be either useful or convenient for the public, and yet the city be obliged to keep it open and maintain it in sufficient repair, it would be imposing upon the public a useless expense; and to so hold would be opposed to both reason and public policy. In our opinion the correct doctrine is that the city has the same control over highways deeded to it, as was Ayers alley, that it does over its other public ways, whether acquired by gift, purchase, or condemnation. In short, all the streets and public ways of a city, however acquired, are subject equally and alike to the control and regulation of the municipal authorities. In accepting the alley under the conveyance, the city did not bind itself irrevocably to keep it open. That is not the fair meaning of the contract. The city assumed the duty of keeping it open as other streets and alleys were kept open, and the right to close it as it might close other streets and alleys."

The soundness of the reasoning supporting the right of the city of Lexington to close the alley set forth by the opinion in the case, *supra*, is equally applicable to the facts of the instant case, and therefore conclusive of the right of the appellee, city of Henderson, to close that part of Heilman street proposed to be discontinued by it. As already remarked there is nothing in the instrument by which it was dedicated to public use as a street, that militates against the right of the city to close it as attempted; and it is not claimed nor attempted to be proved by appellants that they have suffered individual

loss or will sustain any damage by reason of the closing of that part of the street proposed to be discontinued, but only insisted that it will cause inconvenience to them and the public and be of no benefit to the city. Our examination of the evidence fails to convince us of the merit of this contention. In our opinion its weight fairly conduces to prove that the public, including the appellants, will be benefited by the extension and straightening of Heilman street as contemplated and that neither inconvenience nor injury can result to appellants or others from the closing of that part of the street proposed to be discontinued. On the contrary the change in the street when established, will straighten it from appellants' lots to where it will intersect Fifth street, put the street on better ground than it formerly occupied and make the distance from appellants' lots to Fifth street several hundred feet shorter than it was over that part of the street to be closed. We also find ourselves unable to sustain appellants' second contention. Obviously, the fact that they owned, previously to its dedication to the city as and for a public street, a considerable part of the highway embraced in Heilman street, can give them no right to any part of the street to be closed. They never owned the ground abutting either side of that part of Heilman street; on the contrary the whole thereof as well as that to be occupied by the street as changed, is owned by the appellee, Waller and Company, who acquired title to all of it, as well as to the ground included in that part of the street to be closed, subject to the public easement while used as such, from a vendee of one of the heirs at law of Joel Lambert, deceased, who received it through the deed of partition from the other heirs; so in point of fact, the title of the appellee, Waller and Company, is from the same source as that of appellants. This, however, is not material; it is sufficient that its lot borders each side of that part of the street to be closed, which of itself, and as a matter of law, makes it the owner of the abandoned or closed part of the street; therefore, if it be conceded that appellants under their respective titles from the heirs of Lambert had the right to use that part of Heilman street to be closed before its dedication to the city as a street and while it remained a mere passway, after it was accepted by the city as a street, that right ceased when it became closed by the city.

In Trustees of Hawsville v. Landes, 8 Bush 679, we held that "the common law rule, as laid down by Mr. Washburn, is that where land is sold bounded on a highway, or along a highway, the thread or center line of the same is presumed to be the limit and boundary of such land, in strict analogy with the case of a stream of water not navigable; and the same rule applies to a private street, as well in the city as in the country, opened by the grantor, upon which he sells lots bounding upon it." Tiedeman's Real Property (third edition), section 601; 2 Washburn 636; Schneider v. Jacob, etc., 86 Ky. 106; Jacob v. Washfork, 90 Ky. 429; Copping v. Manson, 144 Ky. 634; Williams, etc. v. Johnson, 149 Ky. 409; Blalock v. Atwood, 154 Ky. 395.

In Williams v. Johnson, *supra,* the facts are nearly analogous to those of the case at bar. It appears in that case that the city of London having by proper authority converted a public road within its limits, upon which the appellants' lots fronted, into a macadamized street and in doing so abandoned the use of part, but at no point more than the whole of the road bed in front of the lot, the appellee, their grantor, by actions in ejectment against the appellants, severally, sought to recover such part of the old road bed as lay between their lot and the new street, upon the ground that its abandonment as a public highway entitled him to same. We held, however, that as the deeds by which appellee conveyed the lots described them as fronting and abutting on the old road, and the street was substituted for the old road, its construction and establishment by the city operated to include the abandoned road bed in appellants' lots, respectively, and extend the boundaries thereof to the edge of the street. In the opinion it is in part said:

"It seems to be the universally recognized rule that the conveyance of land bordering upon a public highway conveys title to the center of the highway, subject to its use by the public, whether it is so expressed in the deed or not; and where a conveyance, or a bond to convey, designates the public highway (or street) as one of the boundaries of the tract, it will, in the absence of language showing a contrary intention, be construed as including the highway itself to the center or middle thereof."

Under the doctrine announced the appellee, Waller and Company, is clearly entitled to that part of Heilman street ordered closed; and the agreement of the city of

Henderson to convey it to that company by deed, in exchange for the ground the latter deeded it for the change in the street, was unnecessary. However, appellants cannot complain that that question was determined in these cases, as it was raised by them.

Appellants claim that their right to the continued use of that part of Heilman street adjudged to be closed, notwithstanding the change in the street, arises out of some sort of agreement alleged to have been made to that effect with the city of Henderson when the street was dedicated to the city, cannot prevail. The testimony of C. M. Bullett, president of the appellant, Henderson Elevator Company, and that of the witness, Higdon, constituting substantially the only evidence offered by appellants on this point, was too vague to show the definite making of any such agreement. On the other hand such of the city authorities as testified denied the alleged agreement, or said they had no knowledge of it. Moreover, it was not expressed in the writing between appellants and the city of Henderson, and evidently could not have been communicated to appellants' able and painstaking attorney by whom the writing was prepared, who, upon being interrogated about the matter on the trial, frankly admitted his want of recollection regarding it.

But if such agreement had been established by the evidence, it could not have interfered with the right of the appellee, Waller and Company, to claim and take that part of the street ordered closed, which was and is fixed by the law, because of its ownership of the abutting lots on either side thereof.

We find no error in the judgment and it is affirmed in each of the cases appealed.