# Lee et al. v. City of Park Hills et al.

Oct. 8, 1943.

Charlton B. Thompson for appellants.

Sawyer A. Smith and James E. Quill for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The City of Park Hills, hereinafter referred to as the City, filed this declaratory judgment action against D. Collins Lee and Robert C. Simmons to have the chancellor determine whether the City was the owner of certain water mains constructed by appellants, or whether appellants had the right to collect from the residents of the City a charge of 3c per 100 cubic feet of water delivered them through these mains. Eight property owners filed intervening petitions averring they bought lots in appellants' subdivision which were advertised as having city water; that appellants conveyed to them the right to use these water mains and are now estopped from charging them for the use thereof. The intervenors further pleaded such a charge is repugnant to appellants' dedication and is against public policy. A special demurrer questioning the right of the property owners to intervene in the action was overruled.

By their answer and cross-petition as amended appellants pleaded that for more than 15 years the City and property owners had acquiesced in the control of the water system by appellants and are estopped from denying their ownership and control of same. Appellants sought an injunction against the City leasing the system to the Kenton County Water District No. 1 for a period of 10 years.

After hearing the proof the chancellor in a lengthy and fully considered opinion held the property owners were interested parties and had the right to intervene, and that the appellants were without right to charge them for the use of the water mains. He did not determine the ownership of the mains but denied appellants an injunction forbidding the City to lease the system to the water district.

In 1924 Lee and Simmons opened a large subdivision near Covington, known as Park Hills. They filed some 9 or 10 different plats in the office of the clerk of the Kenton County Court representing various sections of their subdivision, which contained their written dedication to the public of the streets and alleys shown thereon. It was advertised that appellants would, and they did, construct streets, sidewalks, gas and sewer mains, electric lines and a water system. Appellants constructed a 6 inch cast iron water main leading from the water line of the city of Covington 1700 feet to the nearest lot in their subdivision and installed an electric

booster pump and tank and constructed water mains through their large subdivision of some 220 acres, which contained 635 lots. The entire water system cost them in round figures $76,000. It was contemplated the subdivision would be annexed to the city of Covington and in a contract between appellants and the city of Covington of April 24, 1924, it was provided that the former would be paid for their water system; or if the territory was not annexed, the city of Covington agreed to buy this system when the receipts from the sale of water exceeded 6% of the cost of the mains.

From 1924 to 1928 appellants operated this system by furnishing water at 40c per 100 cubic feet, which was its cost to them, and they lost $3500. On June 27, 1927, the subdivision was incorporated as the City of Park Hills. The City approved a lease the appellants made of the water system on Sept. 25, 1928, and another lease they executed on Nov. 5, 1936, whereby appellants disclaimed ownership of all mains not constructed by them. Up to the expiration of their 1936 lease, which was in 1941, appellants had not attempted to collect any rent on their water lines. However, in negotiating a lease in 1941, appellants were to receive 3c per 100 cubic feet on the 30c rate to be charged the consumer. The City refused to concur in that lease and brought this action. While it was pending, the City leased the system to the Kenton County Water Commission for a term of 10 years at the rate of 35c per 100 cubic feet. This is the contract which the appellants sought to enjoin the City from making.

The subdivision consists of high-class residential property. The deeds conveying the lots contained certain building restrictions relative to the location and cost of the homes to be constructed. Appellants seem to have sold some 475 lots and those upon which figures were obtained brought an average price of $2468. Exhibit No. 12 filed by appellees is a conveyance to Joseph N. Cuni and wife dated Oct. 1, 1924, which is a fair sample of the deeds executed by appellants, and conveys "lot 111 as shown upon the plat of Park Hills Subdivision, recorded in Deed Book 206, page 643, said lot fronting 60 feet on the North side of Jackson Road, and being a part of the same property * * *. Together with all the *privileges and appurtenances* (italicized in deed) to the same belonging."

The deed contains this provision:

"The grantors further covenant that they will lay along Jackson Road cement walks, water and gas mains and sewer and to connect said sewer with the present sewer located about 1000 feet East of the Park Entrance.

"The grantees, their heirs and assigns, agree to pay for all repairs to the water main * * * located on Jackson Road * * *, only in proportion as their frontage bears to the total frontage served by said system and the grantors or any owner of said property on said street may cause said repairs to be made and require all owners of property on said street to pay their proportionate part thereof and this obligation shall run with the land and be a charge thereon against all present and future owners thereof, except that this provision shall be void in the event that the property hereby conveyed is included at any time within the limits of an incorporated city."

It is contended by the City that as the water mains are laid in the streets and alleys that the dedication of them included the dedication of the mains. The property owners contend (a) that as their deeds call for the streets as boundaries their lots extend to the center of the streets and they took title thereto (including the mains) subject to the public easement of passage; (b) that the water mains were constructed for their benefit and are appurtenant to the property conveyed them. It is insisted by appellants that the acquiescence of the City and the property owners in appellants' exercise of ownership and control over the mains has estopped them from claiming any interest therein.

It is first necessary to determine whether the chancellor erred in permitting the property owners to intervene in this action. It cannot be doubted that the 3c per 100 cubic feet rental which appellants are seeking to collect for the use of their water mains would come from the pockets of the water consumers in the City. Therefore, they have an interest in the subject of the action and should be parties to it, Civil Code of Practice, Section 22; and as this is a declaratory judgment action they are proper parties under Section 639a—2 of the Code. See 26 C. J. S., Dedication, Sections 68 and 71, pp. 160 and 162, as to the right of abutting property owners to sue when they could be injured by the misuse of the dedicated property.

The instant case is not similar to City of Middlesboro v. Kentucky Utilities Co., 237 Ky. 523, 35 S. W. (2d) 877 and City of Princeton v. Princeton Electric Light & Power Co., 166 Ky. 730, 179 S. W. 1074, where we held that the right of action was in the city and not in the property owners. In those cases the use of the streets by a utility was involved and the abutting property owners were not individually affected as they are in the instant case.

We appear to have no statute relating to a dedication outside of the City, such as was made here, hence this was a common law dedication and the fee to the streets and alleys did not pass, but remained in Lee and Simmons subject to the right of the public to use them for the purpose for which streets and alleys are generally used. 16 Am. Jur., Section 56, p. 402; Fayette County v. Morton, 282 Ky. 481, 138 S. W. (2d) 953. As the dedicators did not lose title to the fee in the streets and alleys, likewise they retained title to the water mains.

Lee and Simmons advertised their Park Hill Subdivision to have city water and in conveying the lots they covenanted to lay cement walks, water, gas and sewer mains. Not only did their deeds bind appellants to construct these water mains, but the deeds placed on the grantees the burden of bearing the cost of repairing the water mains in proportion to the frontage of their lots as is seen from the above quoted excerpt from the Cuni deed. The obligation for repairs placed on the grantees is made a covenant running with the land and is terminated only when the subdivision is included within the limits of an incorporated city. After constructing the water mains for the benefit of the subdivision, Lee and Simmons were careful to relieve themselves from their upkeep and maintenance.

In Kentucky Distilleries & Warehouse Co. v. Warwick Co., 166 Ky. 651, 179 S. W. 611, 614, it was written: "The word 'appurtenances' is generally understood to mean the right to the use of those things that are essential to the full enjoyment of the premises conveyed and which were used as necessary incidents thereto at the time of the conveyance. [1] Bouvier's Law Dictionary [Rawle's Third Revision, p. 224]; Parsons v. Johnson, 68 N. Y. 62, 23 Am. Rep. 149."

When this definition is applied to the facts in this record it can hardly be doubted that the water mains are

appurtenant to the lots conveyed, or that the deeds gave the grantees the right to use them without charge or interference by the grantors.

We are not in accord with appellants that the acquiescence of the City and the property owners in their exercising control over or ownership in the mains estopped the property owners from now asserting their right to use them free of charge. The City was acting in a governmental capacity in exercising control over its streets while dealing with appellants, therefore an estoppel will not lie against it. 31 C. J. S., Estoppel, Section 134, p. 402; Vaughn v. City of Williamsburg, 245 Ky. 339, 53 S. W. (2d) 690. Obviously, the failure of the property owners to take any action relative to the water mains up until the institution of this action would not justify an estoppel being invoked against them since appellants had never attempted before to charge them for the use of the water mains. And since 1924, when the subdivision was opened, they had received water at just what it cost appellants.

The answer to appellants' argument that they are the owners of a water system upon which they expended $76,000, yet they are allowed no return thereon, is that by their advertisement and conveyances of the lots with this water service they evidently have been compensated for their expenditure on the water system by the enhanced price it caused their lots to bring. Mr. Lee in his testimony stated the water system not only increased the value of their lots, but without it he did not think the lots could be sold at all. There is no obligation upon appellants to furnish water mains to the owners of property outside their subdivision which might have been incorporated into the City of Park Hills, and there is no reason why they should not charge them for the use of these mains. Appellants are the legal owners of the water mains laid by them in their subdivision, but same are subject to use without charge by all property owners in the subdivision, as well as others to whom appellants may sell lots in the future. The property owners acting through the City, or any other representative they may choose, have the right to make any contract for supplying water through the mains which they deem to be for their best interests. Of course, appellants have the right to connect any lots they may yet own in the subdivision to these water mains. Should the property owners cease to use the mains for the purpose of supplying water, then

appellants may take possession and make any use or disposition of the mains they desire.

We deem it unnecessary to decide the other interesting questions which have been ably briefed.

The judgment is affirmed.