# Louisville Garage Corporation v. City of Louisville et al.

December 3, 1946.

554

Robert T. Burke and Burke, Sehlinger & Burke for appellant.

Gilbert Burnett and Alex P. Humphrey for appellee City of Louisville.

Thomas J. Wood, and Doolan, Helm, Stites & Wood for appellee Home of the Innocents.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

This suit tests the right of the City of Louisville to levy and collect taxes on the improvements located on land owned by the Home of the Innocents, a charitable institution.

On September 1, 1922, the Louisville Garage Corporation leased from the Protestant Episcopal Orphans Asylum, for a term of fifty years, a lot 93 feet by 159 feet on Fifth Street between Chestnut and Broadway in Louisville, Kentucky. The Protestant Episcopal Orphans Asylum was a charitable organization, and on February 2, 1930, was merged with the Home of the Innocents. The contract of lease provided for the payment of rent in monthly installments in advance at the rate of $1,250 a year for the first five years, $1,500 a year for the next ten years, $1,750 a year for the next ten years, $2,000 a year for the next ten years, and $2,400 a year for the last fifteen years. The lessee agreed to raze the existing improvements located on the lot, and to commence within one year and to complete within three years new improvements on the property at a cost to it of not less than $75,000. Pending the wrecking of the old structure and the erection of the new building, the lessee was to deposit $10,000 in securities with lessor's agent and in the event at least $75,000 was not expended on the new building within three years the $10,-000 in securities was to be turned over to the lessor as liquidated damages. The lessee obligated itself to take

out fire and tornado insurance in full value of the improvements and to continue the insurance in force during the entire term of the lease. In the event of destruction or damage by fire or tornado, the proceeds of the insurance must be used to reconstruct the improvements on the property. The lease contract contained this clause: "The improvements on said property are to belong to lessor at the expiration of this lease without cost." The lessee erected a two-story brick sales and service garage at a cost of more than $75,000 within the time specified in the contract. Some time after the completion of the building, the Louisville Garage Corporation leased the land and improvements to the Louisville Motors, Inc., which thereafter operated the sales and service garage on the premises. The City of Louisville assessed the improvements as of July 1, 1942, at $45,000 and the land at $18,600, and on June 11, 1945, issued tax bills on the improvements in the name of the Louisville Garage Corporation for the years 1943, 1944, and 1945 at the valuation of $45,000. During those years the Louisville Garage Corporation, under the lease contract of September 1, 1922, paid rent to the Home of the Innocents at the rate of $1,750 annually, and received an annual rental of $7,200 from its lessee, Louisville Motors, Inc. This litigation began when the Home of the Innocents brought an action against the City of Louisville to enjoin the collection of taxes on various tracts of land, including the lot on Fifth Street, which had been assessed in its name. In an amended answer and cross-petition the City made the Louisville Garage Corporation a party, and asked that it be held liable for city taxes on the improvements on the land leased by it from the Home of the Innocents. The Louisville Garage Corporation claimed immunity from taxation on the theory that the ownership of the improvements was not in it but was in a charitable institution, and the property therefore was exempt from taxation under section 170 of the Constitution of Kentucky. On final submission the chancellor held, on the authority of City of Louisville v. Presbyterian Orphans Home Society, 299 Ky. 566, 186 S. W. 2d 194, and cases cited therein, that the land leased by the Home of the. Innocents, a charitable institution, to the Louisville Garage Corporation was exempt from taxation, but that the improvements during

the term of the lease belonged to the lessee and are taxable as its property. The Louisville Garage Corporation has appealed.

The general rule is, as stated by appellant, that in the absence of an agreement to the contrary the owner of real estate is the owner of improvements erected thereon by another. That there may be a severance of ownership of land and the improvements thereon, however, is recognized by this and other courts. Ratliff v. Utilities Elkhorn Coal Co., 299 Ky. 563, 186 S. W. 2d 415; American Rolling Mill Co. v. Carol Mining Co., 282 Ky. 64, 137 S. W. 2d 725; Parsons v. Ball, 205 Ky. 793, 266 S. W. 649; People ex rel. Muller v. Board of Assessors, 93 N. Y. 308; Parker v. Redfield, 10 Conn. 490; Central Coal & Lumber Co. v. Board of Equalization, 70 Okl. 131, 173 P. 442; Commissioner v. Hills, 10 Cir., 115 F. 2d 322. The General Assembly of Kentucky has recognized that there may be a severance of ownership for taxation purposes, and has provided for separate valuations of land and the improvements thereon when the property is listed for taxation. KRS 132.230. In prescribing the method of assessment in cities of the first class, the General Assembly provided that "improvements owned by a tenant may be assessed in his name apart from the land." KRS 91.310. In the recent case of Broadway & Fourth Avenue Realty Co. v. City of Louisville, 303 Ky. 202, 197 S. W. 2d 238, we held that improvements erected by the lessee on land leased from a charitable institution for a term of ninety-nine years were not exempt from taxation, but were taxable to the lessee. Appellant undertakes to distinguish that case from the instant one, but we find no material difference in the facts. The rights of the respective lessees in the premises are substantially the same. The lease in the Broadway & Fourth Avenue Realty Co. case was for a longer period, but, on the other hand, the lease in that case provided that the improvements to be built on the land by the lessee were to become the property of the lessor as erected, possession of same to be surrendered upon termination of the lease. In the case before us, the lessee invested $75,000 in a building on the leased land. It has complete control, use, and enjoyment of the building and is receiving income therefrom. It is paying to its lessor $1,750 annually as ground rent, and is receiv-

ing that amount from the sublessee plus $5,450, which can only be rent for the building. A taxable investment of $75,000 or more has been transmuted into an investment represented by a revenue producing building over which appellant has complete dominion during the term of the lease. During that period appellant is, at least, the beneficial owner of the improvements erected by it and should contribute its proper share of the taxes necessary to sustain the government which recognizes and protects its property rights. In a somewhat analogous case the Supreme Court of California, in the early case of City and County of San Francisco v. McGinn, 67 Cal. 110, 7 P. 187, held that the lessee of land which was exempt from taxation was liable for taxes on a building erected by him. The argument there, as here, was that the lessee was not liable for the taxes because the city and county owned the land, the building was a portion of the realty, and therefore not the lessee's property. The court said:

"It is not necessary to follow and answer in detail the various reasons given by defendant why he should not be held liable; it is sufficient to say that, for the purposes of revenue, the legislature of this state has observed a distinction between real estate and improvements, and that distinction has been recognized by this court. * * *

"We are of opinion that, for the purposes of revenue, the defendant was the owner of the property assessed, and that he is liable for the taxes."

To the same effect is Burbank v. Board of Assessors, 52 La. Ann. 1506, 27 So. 947.

The lower court correctly held that appellant is liable for the taxes on improvements erected by it.

It is next insisted that appellant's plea of res judicata should have been sustained. It was alleged in appellant's answer that the City of Louisville assessed the improvements here in controversy for 1924 taxes against appellant as the owner thereof, and in an action instituted to prevent collection of the taxes the circuit court of Jefferson County adjudged that appellant was not the owner of the improvements on the leased property and enjoined the City from taking any action for the collection of the taxes. No appeal was prosecuted from that

judgment. The established rule in this jurisdiction is that an adjudication upon the liability for taxes for one year is no bar to an action for taxes for a subsequent year. City of Newport v. Commonwealth, 106 Ky. 434, 50 S. W. 845, 51 S. W. 433, 45 L. R. A. 518; Louisville Bridge Co. v. City of Louisville, 66 S. W. 814, 23 Ky. Law Rep. 1655; City of Covington v. District of Highlands, 110 S. W. 338, 33 Ky. Law Rep. 323; City of Irvine v. Bergman, 220 Ky. 804, 295 S. W. 1041, 1042. Appellant concedes this to be the rule, but insists it is not applicable where a contract has been construed, and City of Irvine v. Bergman, supra, is cited in support of the argument. In the opinion in that case, the court construed the opinion in City of Newport v. Commonwealth, supra, as holding that "an adjudication upon the liability of taxes for one year is no bar to an action for taxes for a subsequent year, where it did not appear that the adjudication resulted from a contract." The appellant in its brief states that in the City of Newport case the court "expressly excepted the construction of a contract as not being a question presented in that case and to the decision of which it may be that different principles apply." The references in the City of Irvine opinion and in appellant's brief to an exception to the rule apparently stem from the dissenting opinion and not the majority opinion in the City of Newport case. Obviously, the writer of the dissenting opinion had in mind a contract to which the taxing authority was a party, as indicated by the concluding portion of his opinion, which reads (106 Ky. 434, 51 S. W. 435):

"But whether the state is bound by a former adjudication that there exists a contract exemption from taxation, or as to the construction of such contract, is a question not necessarily involved here, and to the decision of which it may be that different principles apply. There would seem to be an essential difference between the commonwealth exercising the highest of its sovereign powers,—a power necessary to its very existence,—and the same commonwealth, its sovereignty laid aside, binding itself as a mere corporate entity by a sealed instrument."

As said by the chancellor, when discussing the plea of res judicata in a written opinion found in the record:

"Those cases in which the plea was upheld are those in which a contract exemption existed between the taxing authority and the taxpayer. An illustration is that where the construction of a franchise was the question involved. In this state of case the parties were held to the former adjudication. But such is not our case. Here we have the adjudication of a question arising out of a contract between a landlord and a tenant, and to which contract the city was not a party."

See annotation in 150 A. L. R. 5.

The judgment is affirmed.